LOTTINGER, Judge.
This is an automobile accident case wherein the plaintiffs are suing to recover for doctor, hospital and medical bills, as well as property damage to their automobile, loss of wages and personal injuries of Mrs. Palmer. The defendants are Frank and Shirley Jarvis, husband and wife, Maryland Casualty Company, which supposedly carried a liability policy on the Jarvis automobile, and Transportation Insurance Company, the uninsured motorist insurer of the plaintiffs (hereinafter sometimes referred to as Transportation). Transportation Insurance Company filed an answer and reconventional demand denying liability of the Jarvises, pleading release as a discharge, and, in the alternative, in the event the release did not act as a discharge, for an offset against plaintiffs for the amount paid out, and additionally, as plaintiff in reconvention, should the release be no good, for a judgment against the plaintiff for the amounts paid as consideration for the release. The Jarvises filed-a general denial.
Maryland Casualty Company was dismissed from the law suit because they did not have any existing liability insurance policy on the Jarvises’ automobile at the time of the accident. The plaintiffs filed an answer to the reconventional demand of Transportation denying that there was ever a release granted. Transportation then filed a third party demand against the Jar-vises in the event the Jarvises were found negligent for any judgment against Transportation. The Jarvises filed a general denial to the third party demand of Transportation.
Following trial on the merits, the Trial Court rendered judgment in favor of plaintiff, Willie Palmer, and against the Jarvises for the sum of $1,224.56, and in favor of plaintiff Fannie Palmer and against the Jarvises for the sum of $750.00. The Trial Court further awarded judgment in favor of Transportation and against the plaintiffs dismissing the plaintiffs demands as to said insurance company and dismissing the re-conventional demand of Transportation against plaintiffs. Judgment was further rendered dismissing the third party demand filed by Transportation against the Jarvis-es. From said judgment, a devolutive appeal was taken by plaintiffs and a protective answer to the appeal was filed by Transportation in the event this Court should reverse the decision of the Trial Court.
*358 The facts disclose that on the early morning of June 6, 1973, Mrs. Fannie Palmer was driving her husband’s automobile east in the right hand lane of the east bound lanes of North Street in the City of Baton Rouge, Louisiana. She stopped for a red light at the intersection of North Street and North Acadian Street. While so stopped, she was hit from the rear by the defendant’s vehicle which was driven by Mrs. Jarvis.
The plaintiffs claim that the Trial Court erred (1) in holding that the receipt signed by Mrs. Palmer was a full release in settlement of the personal injury claim which Mrs. Palmer had against Transportation for all sums due by the Jarvises; (2) in giving any weight to the error in recollection of the part of Mrs. Palmer and in causing her to be denied her right of recovery as a result of a mere error in recollection; and (3) in awarding Mrs. Palmer only $750.00 for the personal injuries, pain and suffering which she sustained as a result of the accident.
As a result of the accident, Mrs. Palmer received certain injuries which were treated by Dr. Alvin Stander, the diagnosis being a contusion of the lower back and forehead. Mrs. Joe Samford, the adjuster for Transportation secured a medical report from Dr. Stander, and received certain bills from Mrs. Palmer which were paid.
Appellant, Mrs. Palmer, argues that the claims adjuster for Transportation never discussed the personal injuries she received as a result of the accident, that she was led to believe the forms she received and signed were merely receipts and not releases and that there was never any intention on her part to settle her claim, thus no meeting of the minds. She further argues that the Trial Judge was in error in placing too much weight on her inability to be able to remember that she received three checks from Transportation rather than one as she originally testified.
The injuries to Mrs. Palmer occurred on June 6,1973. There is filed in evidence the following cancelled checks of CNA Insurance Company, the parent company of Transportation Insurance Company, to wit:
1. Draft issued 8/21/73 payable to Fannie Palmer in the sum of $95.00 for reimbursement of Medical-Bone & Joint Clinic.
2. Draft dated 9/14/73 issued to Fannie Palmer in the sum of $301.25 for reimbursement of hospital bill.
3. Draft issued 10/4/73 to Fannie Palmer in the sum of $406.65 representing reimbursement of loss wages.
There is also filed in the record a letter dated October 4, 1973, addressed to Mrs. Palmer which reads as follows: “We will be in a position to forward our draft in settlement of your claim after you sign and return the enclosed: ‘Proof of loss for $_ Receipt for $707.90.’ ”
Enclosed with the letter was a document entitled “RECEIPT FOR PAYMENT” showing receipt from Transportation of the sum of $707.90 by Fannie Palmer “for payment of all damages by reason of injuries/death sustained by Fannie Palmer and caused by an uninsured automobile owned by Frank Jarvis and operated by Shirley Jarvis.” The receipt further provided:
“The undersigned acknowledges and agrees that said sum represents the full amount of damages due him/her according to the terms of said policy and further agrees, in consideration of such payment, upon the Company’s request, to take such action as may be necessary to recover from the owner or operator of such uninsured automobile the damages suffered by the undersigned. In the event of a recovery, the Company shall be reimbursed out of such recovery to the extent of any payment made to the undersigned; and, in addition, shall be reimbursed for expenses, costs and attorney^ fees by it in connection with such action.”
The receipt was signed by Mrs. Palmer and returned to the insurance company after which the last above mentioned draft was forwarded to Mrs. Palmer. All of the drafts were endorsed by Mrs. Palmer, and in addition, the last draft was also endorsed by her husband.
*359 Mrs. Palmer is apparently an intelligent and educated woman. She attended college for four years, the Baton Rouge Capitol Area Vocational School for thirteen months, and at the time of the accident as well as the time of the trial she was employed at Baton Rouge General Hospital, where she had been so employed since June 10, 1968.
We find no evidence in the record which would disclose that Mrs. Palmer was pressured, harassed or rushed into signing these settlement papers. The documents were mailed to her approximately four months after the accident and after she had recovered and returned to work and after all medical bills which she had presented to Transportation had been reimbursed. She had ample opportunity to study the documents and to consult an attorney or any other third person. She made no phone calls, nor did she write Transportation seeking an opinion or explanation of the language contained in the settlement documents. Although the accident occurred on June 6, 1973, she testified she had no contact with Transportation until approximately two months after being discharged by Dr. Stander. However, she did forward a medical authorization form to Transportation which was on June 14,1973, forwarded to Dr. Stander with a request for a medical report. She testified at first that she received one, and only one, check from Transportation, however, she later testified, after Transportation introduced all three drafts into evidence that she did in fact receive the three drafts introduced.
The Trial Judge in his reasons for judgment said:
“The Court in this case has reviewed the testimony, particularly the previous testimony of Mrs. Palmer. We have heard her testimony today, her explanation. We think the law of this state is to the effect that where a person, reasonably educated and intelligent reads a document saying that it does release claims for personal injuries or death, and in this instance Mrs. Palmer testified that she did so read one of these documents that had that language in it, while it may be unfortunate that the person does not consult an attorney for advise, he or she must be held to have released the insurance company. I believe the Court has to look at this from the standpoint that Mrs. Palmer did read the language which affects the release. We don’t know and would be hesitant to say that she fully understood it but then you must look at the situation from the standpoint of the other side. They proffer it as a release; they pay out $400.00 for loss wages; it was uninsured motorist coverage. They didn’t owe the $400.00 under any provision of the policy as they did under the medical pay provision. They paid out $400 for something in a case in which they thought at the time existed a valid brake defect defense. The law doesn’t say that the insurance adjuster is asked to explain to the payee all her rights and to go into intimate details as to what is being done. It suffices that they deal at arms length and the person who is receiving the money must investigate and use their own judgment as to what they are doing. Over and over we get back to the old admonition that your signature on a document of that sort is not a mere ornamentation. Because of the testimony previously given and the retraction of that testimony today, and the other circumstances, the Court feels compelled to validate the compromise or settlement in this case, and so does.”
Mrs. Palmer contends that the last above quoted sentence in the reasons of the Trial Judge indicate the great weight which he placed on her inability to remember that she had received three checks rather than one. After reading the entire record, and in particular the reasons of the Trial Judge, we cannot agree with this assertion by the appellant. Though the Trial Judge does make mention of this fact in his reasons for judgment, taking into consideration all the facts as found in the record, we cannot agree that this fact alone caused him to find judgment in favor of Transportation and against the plaintiffs. Unless it can be shown that the trier of fact has been manifestly erroneous in its interpretation of the testimony and evidence presented, it is the duty of the Appellate Court not to change factual determinations of the Trial Court. Canter v. Koehring Company, 283 So.2d 716 (La.1973), rehearing denied (1973).
*360 Signatures are not mere ornaments on documents, nor should they be intended to be so. Mrs. Palmer admitted reading the language in the receipt which states that it is a release, and there is no indication in the record that she was so illiterate or uneducated that she could not have understood what she read, or sought help for an explanation of what was contained therein. There is certainly no fraud, duress, harassment or errors shown in the evidence, at least we have not found any. The Trial Court was correct in upholding the validity of the settlement agreement.
Appellant contends that the quantum of $750.00 allowed by the Trial Court as against the Jarvises was grossly inadequate. In the assessment of damages, much discretion must be left to the judge or jury. LSA-C.C. art. 1934(3).
Dr. Stander testified that Mrs. Palmer sustained a contusion of the low back and forehead. He first saw her at Baton Rouge General Hospital on June 6, 1973, at which time he admitted her for observation. She improved gradually and was discharged on June 11. At that time, she was advised to return home and begin a gradual increase in activities. She was next examined by Dr. Stander on July 2, 1973, at which time he prescribed medication for discomfort along with an increase in activity. He did not see Mrs. Palmer after that. She was next seen by Dr. Rieger on May 30,1974. He gave her some mild conservative treatment and next saw her on June 13, 1974, when he concluded that she had sustained a lumbosacral muscle strain resulting in no permanent or total disability. He was of the opinion that the condition was a result of the accident. We feel that under the circumstances the quantum awarded by the Trial Judge, though conservative, is neither excessive nor inadequate.
Therefore for the above and foregoing reasons, the judgment of the Trial Court is affirmed. All cost of this appeal are to be paid by plaintiffs.
AFFIRMED.